**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| CHAMP KEY LIMITED, | Case No.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | |
| CANOO INC., | DEMAND FOR JURY TRIAL |
| Defendant. | |

---

Plaintiff Champ Key Limited ("Champ Key" or "Plaintiff"), by its attorneys, Hogan Lovells US LLP, for its complaint against defendant Canoo Inc. ("Canoo" or "Defendant") alleges as follows:

## NATURE OF THE ACTION

1. This action arises out of Canoo's unjustified and illegal refusal to remove restrictive legends on 17,189,210 shares of Canoo common stock owned by Champ Key (the "Shares"), thereby preventing Champ Key from selling the Shares—the price of which have since plummeted.

2. On or about December 21, 2020, Canoo and certain stockholders of Canoo, including Plaintiff Champ Key, entered into an Amended and Restated Registration Rights Agreement (the "RRA") in order to provide such stockholders with certain registration rights with respect to the securities in Canoo. A true and correct copy of the RRA is attached hereto as Exhibit A.[1]

---

[1] The RRA can also be found at
https://www.sec.gov/Archives/edgar/data/1750153/000121390020044117/ea131799ex10-2_canooinc.htm.

3. The book entry shares of Canoo held by Champ Key were subject to restrictive legends that restricted Champ Key's ability to sell the Shares.

4. The RRA contains certain covenants obligating Canoo to facilitate the removal of the restrictive legend from the stock certificates in the event that Champ Key desires to transfer the Shares.

5. In an attempt to deny Champ Key of its rights under the RRA and Delaware law, Canoo continually and wrongfully refused to remove the restrictive legends on Champ Key's stock certificates.

6. The refusal to remove the restrictive legends was wholly unjustified. Indeed, Canoo admitted to Champ Key that its refusal was based solely on Canoo's desire to put pressure on Champ Key's affiliate, DD Global Holdings Limited ("DD Global"), against which Canoo had previously filed suit.[2]

7. To that end, in an email dated November 17, 2022, Canoo stated that it "would be willing to consent to the request for removal of the restrictive legends as to Champ Key's Canoo shares, only if a written agreement was entered with Champ Key and DD Global by which the proceeds of the sale of Champ Key's Canoo shares were held in an escrow account pending a final resolution of the Action. Upon a final resolution of the Action, the proceeds would either be released to Canoo (if Canoo prevailed in the Action) or to Champ Key (if DD Global prevails)."

8. Accordingly, Canoo's refusal lacks any legal or reasonable basis, and is instead an unlawful and impermissible effort to hold Champ Key's equity hostage as part of Canoo's litigation strategy against another, distinct entity.

---

[2] That unrelated action is *Canoo Inc. v. DD Global Holdings Ltd.*, No. 1:22-cv-03747 (S.D.N.Y.).

9. As a result of Canoo's misconduct and delay, Champ Key was unable to sell its shares as planned, resulting in a loss exceeding $23 million. This loss continues each day, since Canoo's stock price continues to fall while Canoo holds Champ Key's shares hostage.

10. Therefore, Champ Key now brings suit seeking (a) a preliminary and permanent injunction compelling Canoo to remove the restrictive legends on the stock certificates for the Shares; and (b) damages and losses suffered by Champ Key as a result of Canoo's misconduct, in an amount to be determined at trial, in excess of $23 million, as well as compensatory damages, consequential damages, punitive damages, interest, costs of suit, attorney's fees, and any other relief deemed equitable by this Court as a result of Canoo's misconduct.

## PARTIES

11. Plaintiff Champ Key is incorporated in the British Virgin Islands and has its principal place of business in in Hong Kong.

12. Defendant Canoo is an electric vehicle manufacturer, which, according to its filings with the U.S. Securities and Exchange Commission, is incorporated in Delaware and has its principal place of business in Torrance, California.

## JURISDICTION AND VENUE

13. This Court has federal diversity jurisdiction under 28 U.S.C. § 1332. Canoo is incorporated in Delaware, and its principal place of business is California. Champ Key is incorporated in the British Virgin Islands, and its principal place of business is in Hong Kong. Therefore, complete diversity of citizenship exists. The amount in controversy, exclusive of interest and costs, exceed the sum or value or $75,000.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because this action arises out of acts and transactions in this District.

15. In addition, the RRA states:

> Governing Law; Venue. NOTWITHSTANDING THE PLACE WHERE THIS AGREEMENT MAY BE EXECUTED BY ANY OF THE PARTIES HERETO, THE PARTIES EXPRESSLY AGREE THAT (I) THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED UNDER THE LAWS OF THE STATE OF NEW YORK AS APPLIED TO AGREEMENTS AMONG NEW YORK RESIDENTS ENTERED INTO AND TO BE PERFORMED ENTIRELY WITHIN NEW YORK, WITHOUT REGARD TO THE CONFLICT OF LAW PROVISIONS OF SUCH JURISDICTION AND (II) THE VENUE FOR ANY ACTION TAKEN WITH RESPECT TO THIS AGREEMENT SHALL BE ANY STATE OR FEDERAL COURT IN NEW YORK COUNTY IN THE STATE OF NEW YORK.

*See* Exhibit A.

16. Canoo's common stock is listed on the NASDAQ, which is located in New York.

17. Canoo's stock transfer agent, Continental Stock Transfer & Trust Company ("Continental") was, at all relevant times, located in New York City.

## BACKGROUND

**A. Canoo and Champ Key enter into the Registration Rights Agreement**

18. On or about December 21, 2020, Canoo and certain stockholders of Canoo, including Plaintiff Champ Key, entered into the RRA in order to provide such stockholders with certain registration rights with respect to the securities in Canoo.

19. At the time of the execution of the RRA, Champ Key held shares in Canoo that bore a restrictive legend that prevented the sale of the shares into the market.

20. However, in order to facilitate the sale of such shares by stockholders, Canoo agreed in the RRA to the removal of restrictive legends in the event that a stockholder desired to transfer its shares, and could do so within the limitations of the provisions of Rule 144 of the Securities Act of 1933.

21. Specifically, in Section 3.5 of the RRA, the parties agreed as follows:

4

> Reporting Obligations. As long as any Holder shall own Registrable Securities, the Company, at all times while it shall be a reporting company under the Exchange Act, covenants to file timely (or obtain extensions in respect thereof and file within the applicable grace period) all reports required to be filed by the Company after the date hereof pursuant to Sections 13(a) or 15(d) of the Exchange Act. **The Company further covenants that it shall take such further action as any Holder may reasonably request, all to the extent required from time to time to enable such Holder to sell shares of the Common Stock held by such Holder without registration under the Securities Act** within the limitation of the exemptions provided by Rule 144, including providing any legal opinions. Upon the request of any Holder, the Company shall deliver to such Holder a written certification of a duly authorized officer as to whether it has complied with such requirements.

*See* Exhibit A (emphasis added).

22. Furthermore, the RRA states, in relevant part, that:

> If the Company [i.e., Canoo] is required to effect the Registration of Registrable Securities, the Company **shall use its reasonable best efforts to effect such Registration to permit the sale of such Registrable Securities** in accordance with the intended plan of distribution thereof, and pursuant thereto the Company shall, as expeditiously as possible [. . .] otherwise, **in good faith, cooperate reasonably with, and take such customary actions as may reasonably be requested by the Holders**, in connection with such Registration.

*See id.* § 3.1.16 (emphasis added).

23. Accordingly, Champ Key had the right under the RRA to the removal of the restrictive legend in order to sell its shares under Rule 144.

**B. Delaware Law Requires Issuers to Remove Restrictive Legends Upon Request of the Stockholder**

24. Under Delaware law, 8 Del. C. § 158 and 6 Del. C. § 8-401 govern the rights of stockholders to obtain certificates without restrictive legends, and provide for an issuer's obligation to register transfer of a security upon request of a stockholder.

25. Under 8 Del. C. § 158, "[e]very holder of stock represented by certificates shall be entitled to have a certificate signed by, or in the name of, the corporation by any 2 authorized officers of the corporation representing the number of shares registered in certificate form." This includes the right to a proper certificate without a legend or restriction, where such a legend is no longer appropriate. *See Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986).

26. Similarly, § 8-401(a) provides:

(a) If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:

    (1) under the terms of the security the person seeking registration of transfer is eligible to have the security registered in its name;

    (2) the endorsement or instruction is made by the appropriate person or by an agent who has actual authority to act on behalf of the appropriate person;

    (3) reasonable assurance is given that the endorsement or instruction is genuine and authorized (Section 8-402);

    (4) any applicable law relating to the collection of taxes has been complied with;

    (5) the transfer does not violate any restriction on transfer imposed by the issuer in accordance with Section 8-204;

    (6) a demand that the issuer not register transfer has not become effective under Section 8-403, or the issuer has complied with Section 8-403(b) but no legal process or indemnity bond is obtained as provided in Section 8-403(d); and

    (7) the transfer is in fact rightful or is to a protected purchaser.

27. Section 8-401 also applies to removal of restrictive legends, because a removal is deemed a registered transfer. This is because, where the stock is restricted, the issuance of a new, clean certificate to the transferor is normally the essential first step in the transfer process. Thus, a wrongful refusal or unreasonable delay in issuing new share certificates is actionable

under 6 Del. C. § 8–401(b) as the issuance of new share certificates is a ministerial act essential to the registration of a transfer of the stock

28.     Section 8-401(b) further provides for, *inter alia*, damages for "loss resulting from unreasonable delay in registration or failure or refusal to register the transfer."

**C. Champ Key Seeks to Sell Certain of Its Shares and Canoo Refuses to Remove the Restrictive Legends**

29.     In October 2022, Champ Key decided to sell its shares in Canoo. In order to do so, it needed Canoo to remove the restrictive legend.

30.     On October 24, 2022, by email to Canoo's transfer agent, Continental Stock Transfer and Trust ("Continental"), Champ Key requested removal of the restrictive legend on certificates for the Shares.

31.     On October 28, 2022, Champ Key provided Canoo with a legend removal instruction from its outside legal counsel, Gunderson Dettmer Stough Villeneuve Franklin & Hachigian, LLP (the "Legend Instruction Letter"), which:

(a)     attached a listing of the stockholder and corresponding share numbers eligible for sale, pursuant to Rule 144;

(b)     stated that (i) the Shares were acquired by Champ Key more than one year prior to the date of that letter and that Champ Key made full payment for the respective Shares at that time; (ii) Champ Key neither was, nor had been for the three months preceding the Instruction Letter, an "affiliate" of the Company, as that term is defined in Rule 144(a); (iii) Champ Key would not permit any sale or transfer of the Shares except (a) by way of a sale that complied with Rule 144, including the requirement for current public information at the time of any such sale pursuant to Rule 144(i), which is applicable to Canoo due to its status as a former "shell company" as described by Rule 144(i)(1), or (b)

7

pursuant to a transaction that has been registered under the Securities Act of 1933, as amended (the "Act"), including pursuant to any registration statement that may be available to Champ Key; and (iv) Champ Key had in place internal policies and procedures to monitor and ensure that no sale of shares would be made in violation of the foregoing restriction in subsection (iii), *supra*;

(c)   stated that Canoo (i) was a "reporting issuer" under Rule 144(c)(1) of the Act and had been for at least ninety days, (ii) was a former "shell company" as described by Rule 144(i)(1) of the Act and more than one year had passed since Canoo had filed "Form 10 information" with the Securities and Exchange Commission reflecting Canoo's status as an entity that is no longer a "shell company" and had filed all reports and other materials required to be filed by Section 13 or 15(d), as applicable, of the Securities Exchange Act of 1934, as amended, other than Form 8-K reports, during the 12 months preceding the date of the Instruction Letter; and

(d)   instructed Continental, as transfer agent, to remove the restrictive legends from the Shares.[3]

32.   On October 31, 2022, at Canoo's request (via Continental), Champ Key provided a stockholder representation letter confirming, inter alia, Champ Key's agreement to comply with applicable law, and further agreed to indemnify Canoo and hold it harmless from and against any and all loss, damage, claim, liability and expense arising out of or resulting from the breach of any warranty, representation or covenant in the letter.

33.   Thereafter, Canoo (via Continental) requested a broker's representation letter "in connection with a sale because this company is a de-SPAC[.]"

---

[3] The Instruction Letter was effective as of October 28, 2022.  Champ Key does not intend to, and shall not be deemed to, affirm the accuracy of the contents of the Instruction Letter as of the date of this Complaint.

34. On November 1, 2022, Champ Key provided a draft broker representation letter for Canoo's review, which stated that the broker would not permit any sale or transfer of the Shares except:

> (i) by way of a sale that complies with Rule 144 under the Act, including the requirement for current public information at the time of any such sale pursuant to Rule 144(i), which is applicable to the Company due to its status as a former "shell company" as described by Rule 144(i)(1) or (ii) pursuant to a transaction that has been registered under the Act, including pursuant to any registration statement that may be available to the undersigned [broker].

35. In that same email, Champ Key stated:

> [Canoo] has previously agreed to remove restrictive legends and allow the stockholder to transfer the shares to its own brokerage account with rep letters from the stockholder and broker, **even when the stockholder was an affiliate. By the same token, we believe these are sufficient, especially considering the non-affiliate status of the stockholder**.

36. On November 10, 2022, after several additional overtures from Champ Key, Continental stated that Canoo's counsel had responded that Canoo was "not in a position to remove the restrictive legends at [that] time because of the ongoing litigation between the Company and the stockholder."

37. On November 16, 2022, Champ Key responded that it had "provided all reasonable information requested by the transfer agent and the issuer, and the issuer has not provided any valid basis to refuse or further delay the Champ Key Limited's request for removal of the legends. At this stage, the delays occasioned by issuer's erroneous positions are causing harm to Champ Key Limited, and it reserves all of its rights in this regard."

38. Furthermore, Champ Key explained that even if the existence of an unrelated litigation had any relevance to Champ Key's request to remove the restrictive legends (which it does not), Champ Key was not—and is not—involved in any such litigation with Canoo.

9

39. On November 17, 2022, Canoo (via Continental) made the unsupported assertion that "the request to remove restrictive legends by Champ Key (which is under 100% common ownership with DD Global) is an effort by these entities to render DD Global judgment proof in connection with Canoo's pending securities action against DD Global, in which Canoo seeks damages of over $60 million from DD Global[.]"

40. In that same communication, Canoo then stated:

> Canoo would be willing to consent to the request for removal of the restrictive legends as to Champ Key's Canoo shares, only if a written agreement was entered with Champ Key and DD Global by which the proceeds of the sale of Champ Key's Canoo shares were held in an escrow account pending a final resolution of the Action. Upon a final resolution of the Action, the proceeds would either be released to Canoo (if Canoo prevailed in the Action) or to Champ Key (if DD Global prevails).

41. These statements clearly demonstrate that Canoo had no lawful or reasonable basis for refusing to remove the restrictive legends.

42. To the contrary, Canoo admitted that there was no legal reason it could not remove the legends, and that its refusal was based solely on an unlawful and impermissible effort to hold Champ Key's equity in Canoo hostage to Canoo's litigation strategy against DD Global, Champ Key's subsidiary.

**D. Canoo's Stock Price Plummets While Champ Key Is Unable to Sell Its Shares**

43. The closing price of Canoo's stock on November 11, 2022—the day after Canoo's refusal to remove the restrictive legends—was $1.58 per share.

44. However, over the next year, the price dropped precipitously.

45. Both before and after Canoo's refusal, Champ Key intended to sell the Shares via a market sale, and had taken all necessary steps to do so.

46. As of closing on January 12, 2024, the last full trading day prior to the filing of this Complaint, Canoo's stock price was $0.20 per share—an over 87% drop from the stock's $1.58 per share price on November 11, 2022.

47. As a result, Champ Key has suffered a loss of over $23 million from its inability to sell its shares due to Canoo's unlawful refusal.

48. The harm to Champ Key continues to worsen as the price of Canoo's stock continues to fall.

**E. The January 2024 Demand Letter**

49. By letter dated January 3, 2024 (the "Demand Letter"), Champ Key again demanded that the restrictive legend be removed from the Shares and that Canoo pay the full damages caused by Canoo's wrongful actions, plus interest, within five days. A true and correct copy of the Demand Letter is attached hereto as Exhibit B.

50. In the Demand Letter, Champ Key explained that Canoo had violated, *inter alia*, (a) its contractual duties under the Amended and Restated Registration Rights Agreement dated December 21, 2020 to "take such further action as any Holder may reasonably request, all to the extent required from time to time to enable such Holder to sell shares of the Common Stock held by such Holder without registration under the Securities Act within the limitation of the exemptions provided by Rule 144. . ." and (b) Delaware law. *See id.* (citing RRA § 3.5).

51. Canoo never responded.

## COUNT I
### (Breach of Contract Under New York Law)

52.   Champ Key repeats and realleges the allegations of paragraphs 1-51 of this Complaint as if fully set forth herein.

53.   RRA § 3.5 provides that Canoo "further covenants that it shall take such further action as any Holder may reasonably request, all to the extent required from time to time to enable such Holder to sell shares of the Common Stock held by such Holder without registration under the Securities Act within the limitation of the exemptions provided by Rule 144, including providing any legal opinions." *See* Exhibit A § 3.5.

54.   RRA §§ 3.1 and 3.1.16 provide:

> If the [Canoo] is required to effect the Registration of Registrable Securities, [Canoo] shall use its reasonable best efforts to effect such Registration to permit the sale of such Registrable Securities in accordance with the intended plan of distribution thereof, and pursuant thereto [Canoo] shall, as expeditiously as possible [. . .] otherwise, in good faith, cooperate reasonably with, and take such customary actions as may reasonably be requested by the Holders, in connection with such Registration.

*See id.* §§ 3.1, 3.1.16.

55.   On October 24, 2022, Champ Key requested, via Canoo's transfer agent Continental, that the restrictive legends on the Shares' stock certificate be removed.

56.   Champ Key provided Canoo a Rule 144 legend removal instruction letter from Champ Key's counsel.

57.   Champ Key provided a draft broker representation letter for Canoo's review, which stated that the broker would not permit any sale or transfer of the Shares except where doing so would abide by applicable law.

58.   Accordingly, Champ Key satisfied all prerequisites under the RRA, thereby triggering Canoo's contractual duty to remove the restrictive legends on the Shares' certificates.

59. Yet, Canoo refused Champ Key's request to remove the restrictive legend solely on grounds that Champ Key's affiliate, DD Global, was engaged in litigation with Canoo.

60. Canoo has acknowledged that removal of the restrictive legend and the sale of the Shares would be permissible, and had done so in the past with DD Global while it was still a Canoo affiliate pursuant to Rule 144.

61. Yet—in violation of Canoo's contractual duties—Canoo stated that it would remove the restrictive legend only if Champ Key and DD Global entered into a written agreement by which the proceeds of the sale of the Shares would be held in an escrow account pending a final resolution of the action between Canoo and DD Global.

62. Canoo failed to utilize "reasonable best efforts to effect such Registration to permit the sale of" the Shares, despite the fact that Champ Key's request was reasonable, and in accordance with both the RRA and the law.  *See* Exhibit A § 3.1.

63. Had Canoo cooperated reasonably or otherwise exercised reasonable best efforts to remove the restrictive legends, Champ Key would have been able to sell its shares on the market.

64. Instead, Canoo illegally held Champ Key's shares hostage as part of its litigation strategy against DD Global.

65. During that time, November 11, 2022 to closing on January 12, 2024, Canoo's stock price decreased by over 87%, from $1.58 to $0.20 per share.

66. As a result, Champ Key suffered a loss of over $23 million from its inability to sell the Shares due to Canoo's unjustified and unlawful delays.

67. Champ Key has satisfied all of its obligations under the RRA.

13

68. Champ Key has been substantially damaged as a direct and proximate result of Canoo's misconduct.

69. Moreover, Champ Key continues to suffer damages as the price of Canoo's stock drops further.

70. Champ Key therefore seeks entry of a judgment awarding an amount to be determined at trial, which exceeds $23 million.

## COUNT II
### (Violation of 6 Del. C. § 8-401)

71. Champ Key repeats and realleges the allegations of paragraphs 1-70 of this Complaint as if fully set forth herein.

72. Canoo was the issuer of the Shares to Champ Key.

73. Champ Key met all of the statutory prerequisites for removal of the restrictive legend, thereby triggering Canoo's duty to remove the restrictive legend.

74. On October 24, 2022, Champ Key requested, via Canoo's transfer agent Continental, that the restrictive legends on the Shares' stock certificate be removed.

75. Champ Key provided Canoo a Rule 144 legend removal instruction letter from Champ Key's counsel.

76. Champ Key provided a draft broker representation letter for Canoo's review, which stated that the broker would not permit any sale or transfer of the Shares except where doing so would abide by applicable law.

77. Accordingly, Champ Key satisfied all prerequisites under 6 Del. C. § 8-401, thereby triggering Canoo's statutory duties to remove the restrictive legends on the Shares' certificates.

78. Yet, Canoo refused Champ Key's request to remove the restrictive legend solely on grounds that Champ Key's affiliate, DD Global, is currently engaged in litigation with Canoo.

79. Canoo has acknowledged that removal of the restrictive legend and the sale of the Shares would be permissible, and had done so in the past with DD Global while it was still a Canoo affiliate pursuant to Rule 144.

80. Yet—in violation of Canoo's statutory duties—Canoo stated that it would remove the restrictive legend only if Champ Key and DD Global entered into a written agreement by which the proceeds of the sale of the Shares would be held in an escrow account pending a final resolution of the action between Canoo and DD Global.

81. Had Canoo fulfilled its statutory duties, Champ Key would have been able to sell its shares on the market.

82. Instead, Canoo illegally held Champ Key's shares hostage as part of its litigation strategy against DD Global.

83. During that time, November 11, 2022 to closing on January 12, 2024, Canoo's stock price decreased by over 87%, from $1.58 to $0.20 per share.

84. As a result, Champ Key has realized a loss of over $23 million from its inability to sell its shares due to Canoo's unreasonable and unlawful refusal.

85. Under 6 Del. C. § 8-401(b), Canoo is liable for any and all loss incurred by Champ Key resulting from Canoo's refusal to remove the restrictive legend for the Shares and Champ Key's resulting inability to sell the Shares.

86. Accordingly, Champ Key has been substantially damages as a direct and proximate result of Canoo's misconduct.

87. Moreover, Champ Key continues to suffer damages as the price of Canoo's stock drops further.

88. Champ Key therefore seeks entry of a judgment awarding an amount to be determined at trial, which exceeds $23 million.

## COUNT III
### (Preliminary and Permanent Injunctive Relief)

89. Champ Key repeats and realleges the allegations of paragraphs 1-88 of this Complaint as if fully set forth herein.

90. Defendant's refusal to take necessary actions to remove the restrictive legend on the Shares constitutes a violation of Defendant's contractual and statutory duties.

91. As a result of Defendant's actions, Champ Key has been deprived of its rights to alienate ownership of the Shares, which have lost—and continue to lose—value since November 2022.

92. From November 11, 2022, to closing on January 12, 2024, the last trading day prior to the filing of this Complaint, Canoo's stock price decreased by over 87%, from $1.58 to $0.20 per share.

93. Champ Key expects and fears that that Defendant Canoo's share price will continue to drop.

94. Canoo's wrongful refusal to remove the restrictions on the Shares will result in further irreparable damage to Champ Key.

95. Champ Key has been damaged as a result of Canoo's actions, in that Champ Key has been unable to sell or otherwise realize any value from the Shares.

96. There is no adequate remedy at law to compensate Champ Key in the event that it is rendered unable to realize any value from the Shares.

97. Canoo's actions are without basis or merit.

98. Based on the facts as pled herein, Champ Key can succeed on the merits of its claim.

99. Based on the facts as pled herein, Champ Key is more likely than not to suffer irreparable harm in the absence of preliminary relief.

100. Based on the foregoing, Champ Key seeks a mandatory preliminary injunction requiring and compelling Canoo to remove the restrictive legend from the Shares.

101. Champ Key's request for a mandatory preliminary injunction is reasonably suited to abate the threatened harm identified herein.

102. Based on the facts pled herein, Canoo is likely to attempt to prohibit, inhibit, or otherwise impede Champ Key from selling the Shares once the restrictive legends are removed.

103. Accordingly, Champ Key also seeks a preliminary injunction enjoining Canoo from taking any action to prohibit, inhibit, or otherwise impede Champ Key from selling the Shares once the restrictive legends are removed.

104. Lastly, Champ Key seeks entry of a judgment permanently enjoining Canoo from taking any action to prohibit, inhibit, or otherwise impede Champ Key from selling the Shares once the restrictive legends are removed.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff Champ Key respectfully requests that this Court enter an order:

(a) For a mandatory preliminary injunction, pending final resolution of this action, compelling Canoo to remove the restrictive legends on the stock certificates for the Shares;

(b) Preliminarily enjoining Canoo from taking any action to prohibit, inhibit, or otherwise impede Champ Key from selling the Shares once the restrictive legends are removed;

(c) Permanently enjoining Canoo from taking any action to prohibit, inhibit, or otherwise impede Champ Key from selling the Shares once the restrictive legends are removed;

(d) Awarding damages and losses suffered by Champ Key as a result of Canoo's misconduct, in an amount to be determined at trial, which exceeds $23 million, as well as compensatory damages, consequential damages, punitive damages, interest, costs of suit, attorney's fees, and any other relief deemed equitable by this Court as a result of Canoo's misconduct; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
January 16, 2024

Respectfully submitted,

*/s/ Dennis H. Tracey III*

HOGAN LOVELLS US LLP
Dennis H. Tracey III, Esq.
Arthur J. Herskowitz, Esq.
390 Madison Avenue
New York, New York 10017
Tel: +1 212.918.3000
Fax: +1 212.918.3100
dennis.tracey@hoganlovells.com
arthur.herskowitz@hoganlovells.com

*Counsel for Plaintiff Champ Key*