USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/11/2024

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHAMP KEY LIMITED,<br><br>    Plaintiff,<br><br>  vs.<br><br>CANOO, INC.,<br><br>    Defendant. | Case No. 1:24-cv-00301-MMG<br><br>**STIPULATION AND ORDER GOVERNING PROTOCOL FOR PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION** |

The following Stipulation and Order Governing Protocol for Production of Documents and Electronically Stored Information shall apply to all discovery of Electronically Stored Information ("ESI") and documents in the above-captioned action.

All parties to this action (each a "Party" and both the "Parties") hereby stipulate and agree as follows:

**I.    SCOPE OF DISCOVERY**

The Parties agree that pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure the scope of discovery is limited to those matters that are both relevant to the Parties' claims and defenses and proportional to the needs of the case. The Parties further agree to meet and confer in an attempt to reach agreement on the scope of discovery as it relates to:

- Data sources;
- Date ranges;
- File types;
- Custodians; and
- Search Terms.

The Parties further agree that, absent a showing of good cause, the following categories of ESI are presumed to be inaccessible and not discoverable:

- Deleted, slack, fragmented, unallocated, or other data only accessible by forensics.

- Temporary data stored in a computer's random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

- Online access data such as temporary Internet files, history, cache, and cookies.

- Data in metadata fields that are frequently updated automatically, such as last-opened dates.

- Data duplicated in any electronic backup system for the purpose of system recovery or information restoration, including but not limited to, system recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged, overwritten or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

- Back-up tapes or other long-term storage media that were created strictly for use as a data back-up medium.

- Recorded voice messages, including audio, video, or audio-visual information, including telephonic recordings or voicemail (e.g., .wav, .mp3, .avi, .swf, etc.),

- Electronic data (e.g., call logs, email, calendars, contact data, notes, etc.) sent to or from mobile devices (e.g., iPhone, iPad, Android, and Blackberry devices), if a copy of such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

- Logs of calls made from mobile devices.

- Server, system, or network logs.

- Data remaining from legacy systems no longer in use that is unintelligible on systems in use.

## II.    PRODUCTION SPECIFICATIONS

The Parties agree that the documents and information produced in this Action will be produced in accordance with the following specifications:

A.    <u>Paper Records</u>:

Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format specified in **Appendix A**.  In scanning paper documents,

distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

B.    ESI:

The Parties agree, subject to the exceptions herein, that they will produce electronically stored information ("ESI") in TIFF format according to the following specifications set forth in **Appendix A**.

TIFFs shall be produced as black & white, single-page TIFF images in accordance with the technical specifications set out in **Appendix A**, unless agreed with the opposing Party or ordered by a court. Upon written request that identifies a reasonable number of individual documents at issue by Bates number, a Party shall produce color images for those documents. Documents produced in color shall be produced as single page, 300 DPI, color JPG images with the quality setting of 75% or higher.

All TIFF files are to be provided with an accompanying searchable text (.TXT) file extracted from the native, electronic file (not generated as an OCR file from the TIFF image(s)), and such text files shall contain the full text extraction. To the extent reasonably feasible, extracted text shall provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows.[1] In the case of files with redacted text, OCR'ed text of the redacted documents may be provided in lieu of extracted text. OCR software should be set to the

---

[1]    To the extent that a producing Party deems it not reasonably feasible to provide all comments, tracked changes, speaker's notes, and text from hidden worksheets, slides, columns and rows in the extracted text, the producing Party shall notify the receiving Party, in the cover letter for the production, the categories of documents or document types it is not feasible for each production.

highest quality setting during processing.  For documents in foreign languages, the OCR shall be performed using an OCR tool and settings suitable for the particular byte or multi-byte languages.

In the case of email, the corresponding text file shall include, where reasonably available: (1) the individual(s) to whom the communication was directed ("To"); (2) the author(s) of the email communication ("From"); (3) who was copied and blind copied on such email ("CC" and "BCC"); (4) the subject line of the email ("RE" or "Subject"); (5) the names of any attachments; and (6) the text (body) of the email.

C.    <u>Metadata Fields:</u>

The metadata fields specified in **Appendix A** that are associated with each electronic document will be produced, to the extent they are available.  No Party shall be required to manually populate any fields that do not exist as a document is maintained in the ordinary course of business.

D.    <u>Documents Produced in Native Format:</u>

The Parties agree that they will produce the following types of ESI in their native file format: (1) spreadsheets (Excel, Lotus, Numbers, etc.) and .csv files, (2) presentation files (e.g., PowerPoint, Keynote, etc.), (3) audio and video files (e.g., .mp3, .mp4, .wav, etc.)

E.    <u>Redacted Files:</u>

Extracted text will *not* be provided for electronic documents that have been redacted—*e.g.*, for privilege or personal information—because the extracted text would reveal the redacted information.  Instead, these files should be run through an OCR process to capture the visible text only and the results exchanged in lieu of the original extracted text.  Documents that do not render in a readable format to TIFF, such as Excel spreadsheets, may be redacted in native form, so long as the producing Party keeps a pristine, unredacted copy of the native file and identifies the natively redacted documents to the receiving Party in the redaction field.

F.       Deduplication and Removal of System Files:

Each Party will dedupe ESI globally for exact duplicate documents (based on MD5 or SHA-1 hash values at the parent document level).  This will result in the producing Party producing only a single copy of responsive Duplicate ESI, provided that all other custodians of the Duplicate ESI are listed in the "Duplicate Custodians" (or similar name) field.  The Parties shall de-duplicate stand-alone documents against stand-alone documents and shall de-duplicate top-level email documents against top-level email documents.  De-duplication shall not break apart families.  The Parties further agree that Common system and program files as defined by the NIST library need not be processed, reviewed or produced.

G**.**       Most Inclusive Email Productions:

Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files.  A most inclusive email thread is one that contains all of the prior or lesser-included emails, including attachments, for that branch of the email thread.  The Parties agree that removal of wholly included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting.  Threading is therefore permitted, though not required.

For the avoidance of doubt, only email messages for which the parent document and all attachments are contained in the more inclusive email message will be considered lesser inclusive messages that need not be produced.  If the later-in-time message contains different text (such as where the later message adds in-line comments to the body of the earlier message), or does not include an attachment that was part of the earlier message, the earlier message must be produced.  To the extent that an e-mail thread contains privileged communications, such communications can be redacted.  If an e-mail thread contains both responsive, privileged communications and

responsive, non-privileged communications, the entire e-mail thread cannot be withheld as privileged.

  H. <u>Parent-Child Relationships:</u>

   The Parties agree that parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable.  For example, if a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order directly behind the e-mail to the extent reasonably practicable.

  I. <u>Proprietary or Third-Party Software:</u>

   To the extent that information produced pursuant to this Protocol cannot be rendered or viewed without the use of proprietary or third-party software, the Parties agree to meet and confer to minimize any expense or burden associated with the production of such information in an acceptable format.

  J. <u>Structured Data:</u>

   The Parties agree that to the extent that potentially relevant and proportional data is contained in databases, or other sources or structured data, they will meet and confer regarding how best to identify and produce information from those sources.  If it is determined after meeting and conferring with the requesting Party that any such discoverable data can be produced in an already existing and reasonably available report based on agreement, then the producing Party may collect and produce the data in that report format.  If existing report forms do not reasonably provide the requested information, the Parties will meet and confer to agree upon an acceptable format for production.

K.     Hyperlinked Documents:

The Parties agree that current collection tools do not adequately allow a Party to collect all documents referenced in hyperlinks contained in specific documents.   Each Party will use reasonable efforts to collect such hyperlinked documents where possible.   Any such hyperlinked document a Party is able to collect will be processed so as to appear as an attachment to the document in which the hyperlink appears.   There is no obligation for a Party to obtain copies of hyperlinked documents that are within the possession, custody and/or control of third parties.   To the extent that the receiving Party believes that a specific hyperlinked document is necessary in order to understand the contents of the parent document, it may request that the producing Party conduct a reasonable search to determine whether the document in question exists and/or has already been produced in the Action.

L.     Production Media:

The Parties shall produce documents via, a secure zip file, an encrypted Secure File Transfer Protocol ("SFTP") or an encrypted readily accessible electronic media (i.e., an encrypted hard drive) or the Parties agree on an alternate method of transmission that provides similar security for the data and documents included in the production(s).   The produced documents shall be password protected and/or encrypted and the producing Party shall provide the password(s) necessary to access the produced documents under separate cover.

M.     Bates Numbering:

Each Party will use a single prefix production prefix unique to that entity.   Production prefixes must not use any spaces or any punctuation marks.   Production prefixes should be no longer than six characters.   Production prefixes should not end with one of the following characters: capital "D", capital "I", lower case "l", capital "O" or lower case "o".   The numeric

portion of each production number should be padded to 8 digits.  The unused digits of the unique number shall be filled with placeholder zeros (0) to facilitate electronic sorting of the documents. Productions should contain sequential Bates numbers with no gaps.  There should be no gaps in Bates numbers between productions.  If a Bates number or set of Bates numbers is skipped in a production, the producing Party shall so note in a cover letter, redaction log, or privilege log.  To the extent possible, each native photograph should be assigned its own Bates number.

Documents designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as set forth in the Protective Order shall be so marked at the bottom left-hand side of each page, without obscuring any imaged information or the Bates number.  For native filed designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL," the placeholder TIFF image shall be marked "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL."  For any documents produced in native format, producing Parties shall have the option of adding a "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" legend embedded in the document in any manner that does not obscure or otherwise alter information contained in the document.

## III.    Privilege Logging

A.    <u>Production of Privilege Logs:</u>

The producing Party must serve a privilege log identifying all ESI and non-ESI that it either redacted or withheld from the production due to attorney-client privilege or work product protection on August 12, 2024.  *See* Civil Case Management Plan and Scheduling Order ¶ 12. Except as provided otherwise below, for any document withheld in its entirety the producing Party will produce privilege/redaction logs in MS Excel format or any other format that permits electronic sorting and searching.  The information contained in each Party's respective privilege log shall comply with the requirements set forth in Rule 26(b)(5).

B.      Exclusions from Logging:

The Parties agree that the following categories of privileged documents do not need to be included on a Party's privilege log, unless good cause exists to require that a Party do so:

1.      Documents and/or information created on or after the date of the Complaint in this Action;

2.      Any communications exclusively between the producing Party and its outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Fed. R. Civ. P. 26(b)(4), testifying experts in connection with specific litigation;

3.      Any privileged materials created by or specifically at the direction of a Party's outside counsel, an agent of outside counsel other than the Party, any non-testifying experts in connection with specific litigation, or, with respect to information protected by Federal Rule of Civil Procedure 26(b)(4), testifying experts in connection with specific litigation.

C.      Redacted Documents Do Not Need to be Logged:

Redacted documents need not be logged as long as: (a) for emails, the objective metadata (i.e., to, from, cc, bcc, recipients, date, and time), unless the privilege or protection is contained in these fields), and the reason for the redaction, including the nature of the privilege asserted, is noted or otherwise ascertainable on the face of the document; and (b) for non-email documents, the extent of the redaction and the reason for the redaction is noted or otherwise ascertainable on the face of the document.

In accordance with this Paragraph, the producing Party will undertake reasonable efforts to make limited, line-by-line redactions of privileged or work product information.  After receipt of the production, if the requesting Party cannot discern the basis for a specific privilege redaction,

it may request in good faith that the producing Party create a privilege log for specific redacted documents.  The producing Party shall identify the redacted documents on such log by their Bates numbers.  Electronic documents that are redacted shall be identified as such in a "redaction" field in the accompanying data load file.

        D.    <u>Rule 502(d) Non-Waiver:</u>

Pursuant to Rule 502(d) of the Federal Rules of Evidence, the production of any material or information protected by any applicable privilege in this Action ("Privileged Material"), whether inadvertent or otherwise, shall not be deemed to waive any privilege or work product protection in this Action or in any other federal or state proceeding.  This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d).

        E.    <u>Clawback Process:</u>

Upon the discovery by the producing Party that Privileged Material was unintentionally produced in this Action, the producing Party shall promptly notify the receiving Party in writing that the producing Party is requesting the return of Privileged Material (the "Clawback Notice").  Such Clawback Notice should identify the Privileged Material by Bates number.  Should the receiving Party discover that Privileged Material has been produced in this Action, the receiving Party shall promptly notify the producing Party of the existence of such Privileged Material and request that the producing Party confirm in writing whether it requests that such material should be returned.

Upon receiving written notice from the producing Party that privileged and/or work product material has been produced and should be returned, the receiving Party shall return all Privileged Material identified in such written notice, and all copies thereof, to the producing Party within ten (10) business days of receipt of such notice.  The receiving Party shall also attempt, in good faith, to retrieve and return or destroy all copies of the Identified Materials in electronic

format.  The receiving Party may make no use of the Privileged Material during any aspect of this matter or any other matter, including in depositions or at trial, unless the producing Party waives any protection in writing or the Privileged Material is later determined by a court to not be privileged or otherwise protected from disclosure.

The producing Party will promptly provide a privilege log providing information required by Rule 26(b)(5) of the Federal Rules of Civil Procedure and applicable case law to the receiving Party.

F.     <u>Privilege Challenges:</u>

Should the receiving Party wish to challenge the producing Party's assertion of privilege and/or work product protection for a specific document that would otherwise need to be returned under the terms of this Protocol, the receiving Party may keep one copy of such document to use solely for the purposes of challenging the producing Party's assertion.  The Parties agree that the mere fact that a document was produced in this Action does not waive any applicable privilege or protection.

If the receiving Party intends to challenge the assertion of privilege or work product protection with respect to a specific document, the receiving Party must notify the producing Party, within 10 days of receiving written notice of its privileged status, of the receiving Party's grounds for the challenge.  The Parties agree to meet and confer concerning any such dispute within 10 days of receiving written notice that Privileged Material should be returned.  Should the Parties fail to resolve the dispute, the receiving Party must within 15 days of the meet and confer either move the Court for a determination regarding whether the specific document in question is privileged or return the Privileged Material to the producing Party in accordance with the terms of this ESI Protocol.

## IV.   NON-ENGLISH LANGUAGE DOCUMENTS AND ESI

A.     Metadata

In addition to the required production Metadata and Load File formats specified elsewhere in this Order, including in Appendix A, with respect to any documents and ESI in languages other than English (e.g., Chinese), the Parties agree to meet and confer prior to the production of any such documents in an attempt to reach agreement on the production of any additional Metadata that may be required for any translations produced to another Party.

B.     ESI Search Terms

For any ESI search terms to be utilized in this action, the Parties agree to meet and confer in an attempt to reach agreement on mutually agreeable translations of such search terms into any relevant languages, dialects, or character sets.

## V.   GENERAL PROVISIONS

A.     This Stipulation and Order shall not limit or expand the scope of discovery permissible under the Federal Rules of Civil Procedure, any Local Rule, or any other Court order. Except as specified herein, the Federal Rules of Civil Procedure, Local Rules for the Southern District of New York, and this Court's Individual Practices shall govern discovery and motion practice.  The stipulations herein may be modified by agreement of the Parties, or by the Court upon a showing of good cause.  The Parties shall seek to cooperate and make good faith efforts to avoid duplicative or other unnecessary discovery.

B.     This Stipulation and Order does not address and shall not be construed or interpreted to address or determine, whether documents, ESI, or any other information or data (collectively, "Discovery Material") produced subject to the terms of this Stipulation and Order are relevant or admissible in this action or any other action or proceeding.  Admissibility of

Discovery Material in this action shall be governed by the Federal Rules of Evidence, and/or any other applicable law, rule, or order of this Court.  Any production of Discovery Material made pursuant to this Stipulation and Order is also subject to the requirements and protections set forth in the Protective Order entered by the Court in this matter (the "Protective Order").

C.     The Parties shall meet and confer in good faith as necessary on any issue regarding ESI that arises under this Stipulation and Order or otherwise.  In the event the Parties cannot reach an agreement on a disputed matter, the Parties shall submit the matter to the Court consistent with the Court's Local Rules.

D.     The Parties agree that if Predictive Coding or Technology Assisted Review ("TAR") will be employed to prioritize Documents for review and production, that the Parties will meet and confer in good faith regarding the process, benchmarks, and reporting obligations for the use of TAR.

E.     The existence of this Stipulation and Order shall not prohibit a Party seeking production of Discovery Material and a Party making a production of Discovery Material from agreeing to terms and conditions governing such production that differ from, or are in addition to, the terms and conditions set forth in this Stipulation and Order.  Any such agreement shall be in writing.

SO STIPULATED AND AGREED.

Dated: July 5, 2024

/s/ *Aaron H. Marks*                                    /s/ *Patrick N. Petrocelli*

Aaron H. Marks, P.C.                             Dennis H. Tracey, III
Stephanie Shimada Taylor                        Patrick N. Petrocelli
Kirkland & Ellis LLP                             Hogan Lovells US LLP
601 Lexington Avenue                             New York, New York 10017
New York, New York 10022                        Phone: (212) 918-3000
Phone: (212) 446-4856                            dennis.tracy@hoganlovells.com
aaron.marks@kirkland.com                         patrick.petrocelli@hoganlovells.com
stephanie.taylor@kirkland.com

                                                 *Counsel for Plaintiff Champ Key Limited*

*Counsel for Defendant Canoo Inc.*

Dated: _July 11_____, 2024        SO ORDERED

                                          _____
                                          MARGARET M. GARNETT
                                          United States District Judge

**APPENDIX A:**
**TECHNICAL SPECIFICATIONS AND**
**REQUIRED METADATA FIELDS**

1. **IMAGES:**

   - Produce documents as single page, black and white, Group IV, TIFF files.

   - Image Resolution 300 DPI.

   - File Naming Convention: Match Bates Number of the page.

   - Insert placeholder image for files produced in Native Format.

   - Original document orientation shall be retained.

   - Images shall reveal comments, notes, track changes, speaker notes, and the like.

2. **SPECIAL FILE TYPE INSTRUCTIONS:**

   - Responsive, unredacted Microsoft Excel and other spreadsheet files, Powerpoint/Keynote and other presentation files, audio/video files, and animation files shall be produced in Native Format.

   - The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in Native Format.

   - The placeholder will be branded with the production number in the lower right-hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left-hand corner of the placeholder.

3. **FULL TEXT EXTRACTION/OCR:**

   - Produce full extracted text for all file types (redacted text will not be produced) including text of embedded content.

   - Produce OCR text for any paper document.

   - Produce OCR text for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (redacted text will not be produced).

   - Produce OCR text for any redacted document.

   - Production format: Single text file for each document, not one text file per page.

   - File Naming Convention: Match BegBates Number.

4.    **LOAD FILES:**

Data Load File:  The data load file should use standard Concordance delimiters:

- Comma - ¶ (ASCII 20);

- Quote - þ (ASCII 254);

- Newline-® (ASCII174);

- The first record should contain the field names in the order of the data;

- All date fields should be produced in mm/dd/yyyy format;

- Use carriage-return line-feed to indicate the start of the next record;

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.); a separate volume should be created for each piece of media delivered;

- The name of the data load file should mirror the name of the delivery volume, and should have a .DAT extension (i.e., ABC00l.DAT);

- The volume names should be consecutive (i.e., ABC00l, ABC002, et. seq.).

Image Load File:  The image load file should include the following:

- The name of the image load file should mirror the name of the delivery volume, and should have an .OPT extension (i.e., ABC001.0PT).

- The volume names should be consecutive (i.e., ABC001, ABC002, et. seq.).

- There should be one row in the Load File per TIFF image.

- Every image in the delivery volume should be contained in the image load file.

- The image key should be named the same as Bates Number of the page.

- Load files should not span across media (e.g., CDs, DVDs, Hard Drives, Etc.), i.e., a separate volume should be created for each piece of media delivered.

- The Opticon OPT image load file (.OPT) configuration shall be a page level comma delimited file containing seven fields per line: PageID, VolumeLabel, ImageFilePath, DocumentBreak, FolderBreak, BoxBreak, PageCount

16

5.      **PRODUCTION MEDIA:**

The producing Party shall produce all documents and information via secure zip files, secure FTP site, or via an encrypted external hard drive.  The producing Party shall accompany all document productions with a transmittal cover letter, sent to the other Party by e-mail (for productions via secure FTP site) or e-mail and U.S. mail (for productions via computer or electronic media) identifying by Bates number the documents produced.

### METADATA FIELDS

| Field | Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| Production Number Begin | Beginning page production number | x | x | x |
| Production Number End | Ending page production number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Attachment Count | Number of attachments. | x | x | |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| Duplicate Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format; semi-colon delimited | x | x | |
| File Name | File name of document | x | x | |
| File Extension | File extension of document | x | x | |

| Email Outlook Type | Type of Outlook item, e.g. email, calendar item, note, task | x | | |
|---|---|---|---|---|
| Page Count | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | x | x | x |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x | |
| Author | Document author of a non-Email document. | | x | |
| Email Subject | Subject of email | x | x | |
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copies | x | x | |
| BCC | Email blind copyees | x | x | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Hash Value | Unique electronic signature of email or electronic file used for deduplication. | x | x | |
| Message-ID | The Outlook Message ID assigned by the Outlook mail server, if applicable. | x | | |

| Production Volume | Production volume name | x | x | x |
|---|---|---|---|---|
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |
| Native Link | Path to produced native file used for linking. | x | x | x |
| Extracted Text Link | Path to produced extracted text file used for database linking. | x | x | x |